IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

AMERICAN NATIONAL PROPERTY )
AND CASUALTY COMPANY, )
 )
          Plaintiff, )
 )
v. ) Case No. 16-2836-JWL
 )
DANA SEAR, individually and as )
defendant ad litem for decedent Michael Sear, )
 )
          Defendant. )
 )
_____)

**MEMORANDUM AND ORDER**

This matter comes before the court on the motion by plaintiff American National Property and Casualty Company ("ANPAC") for summary judgment on its claim for a declaration that it has paid defendant Sear, its insured, the amount due under its policy for underinsured motorist (UIM) benefits (Doc. # 14). For the reasons set forth below, the Court **grants** the motion and awards judgment in favor of plaintiff ANPAC.

**I.**     **Facts**

For purposes of this motion, the parties have agreed to the following uncontroverted facts. Michael Sear died after his automobile collided with another automobile in Missouri. Dana Sear, decedent's spouse, filed suit in Missouri state court, individually and as plaintiff ad litem for decedent, against the other driver. For the

purpose of this motion, the parties have stipulated that the other driver is liable for the alleged damages and that the damages exceed $250,000. The other driver's insurer paid its policy limit of $100,000 to settle the Missouri suit.

Decedent Sear was insured at the time of the accident under a policy issued by ANPAC that included a $250,000 UIM limit. Defendant Sear demanded payment of the $250,000 UIM limit from ANPAC, but ANPAC agreed to pay and did pay only $150,000 in UIM benefits, based on a policy provision that provided an offset for the other driver's $100,000 liability coverage limit. ANPAC subsequently filed this declaratory judgment action against Ms. Sear (based on diversity jurisdiction), by which it seeks a declaration to the effect that it is entitled to the offset and that therefore it is not liable under the policy for the additional $100,000 sought by Ms. Sear. By the present motion, ANPAC seeks summary judgment on that claim for declaratory relief.

## II.    **Analysis**

The parties agree to the relevant facts here. Thus, the Court will grant the motion if ANPAC is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a).

This Court has previously set out the relevant principles for the interpretation of an insurance policy under Kansas law:[1]

---

[1]The insurance policy was issued in Kansas to Kansas residents, and the parties agree that Kansas law governs the present dispute. *See State Farm Mutual Auto. Ins. Co. v. Oursler*, 2008 WL 5109777, at *1 (D. Kan. Dec. 2, 2008) (Lungstrum, J.) (applying
(continued...)

Under Kansas law, the construction and interpretation of an insurance policy is a question of law to be determined by the court. If the relevant facts are undisputed, the court may determine whether they are within the terms of the policy. An insurance contract must be construed in a way that gives effect to the parties' intent. If the language in the insurance policy is unambiguous, the court cannot remake the contract, it must be enforced as made. Unambiguous language is to be taken in its plain, ordinary, and popular sense. If the language in the policy is ambiguous, the policy terms are construed in favor of the insured. In *Brumley*, the Kansas Supreme Court set out its test for ambiguity explaining:

> To be ambiguous, a contract must contain provisions of language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Ambiguity in a written contract does not appear until the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meaning is the proper meaning.

*See Fidelity & Deposit Co. of Md. v. Hartford Cas. Ins. Co.*, 189 F. Supp. 2d 1212, 1215-16 (D. Kan. 2002) (Lungstrum, J.) (footnote and internal citations and quotations omitted) (quoting *Brumley v. Lee*, 265 Kan. 819 (1998)). Moreover, in construing an insurance policy, a court considers the instrument as a whole, and "[i]nsurance policy language is tested by what a reasonably prudent insured would understand the language to mean." *See Iron Horse Auto, Inc. v. Lititz Mut. Ins. Co.*, 283 Kan. 834, 839 (2007).

The policy's offset provision on which ANPAC relies states as follows:

Coverage for losses caused by an **underinsured motorist** shall be limited to the difference between the **Underinsured Motorist** Coverage limits provided in this Part and the coverage limits provided in any applicable

---

[1](...continued)
Kansas law under Kansas choice-of-law rules in dispute concerning benefits under insurance policy issued to a Kansas resident involved in an accident in Missouri).

3

> **bodily injury** liability bond or policy.

(Emphasis in original.) As applied in this case, UIM coverage would be limited to $150,000—the difference between the $250,000 UIM limit in the policy and the $100,000 coverage limit in the other driver's policy. This provision unambiguously provides for such an offset. Ms. Sear has not offered any alternative interpretation of this provision; indeed, Ms. Sear does not dispute that, if this provision is given effect, coverage would be limited to the $150,000 already paid by ANPAC.

Instead, Ms. Sear argues that the policy is rendered ambiguous by other provisions that do not reference an offset and thus conflict with the offset provision. Those provisions do not directly conflict with the offset provision, however, such that the entire policy, read as a whole, is ambiguous. For instance, Ms. Sear cites the policy's Declaration page, which lists the "limit per person/accident" for "uninsured and underinsured motorist" coverage as "250,000/500,000". The Declaration, however, does not deny the possibility of an offset—it is true that, even with application of an offset, the limit (the maximum possible amount) for UIM benefits under the policy is $250,000 per person. It is clear to any reasonable insured that those maximums on the Declaration page are not awarded in every case, but that the entire policy, with its many terms, sets forth the requirements and limitations and exclusions for coverage and the receipt of benefits under the policy. For example, the policy's section outlining the "Personal Injury Protection" coverage imposes monetary limits for benefits relating to certain expenses incurred by the insured. The fact that the Declaration page does not include

4

all of the specific limitations set forth in the policy when listing the maximum coverage amounts does not render the policy ambiguous with respect to the application of the specific limitations.

Ms. Sear next cites the opening sentence of the policy's section on uninsured and underinsured motorist coverage (Part IV), which states as follows:

> We will pay damages for **bodily injury** which an **insured person** is legally entitled to recover from the owner or operator of an **uninsured** or **underinsured motor vehicle**.[2]

(Emphasis in original.) Ms. Sear argues that this provision does not mention an offset in the case of an underinsured motorist. That provision, however, cannot reasonably be understood, in the context of the entire policy, to mean that coverage always extends to the full amount of the damages, without any limits. The most obvious limitation is the $250,000 limit stated in the Declaration page. That limitation, along with all other limitations that apply to this coverage (including the offset provision), are set forth in the remainder of Part IV of the policy. Thus, after that opening provision, Part IV continues with a subsection of additional definitions applicable to uninsured and UIM coverage

---

[2]The policy generally defines "uninsured motor vehicle" to mean a vehicle the use of which is not insured by an injury liability policy. An "underinsured motor vehicle" is generally defined in the policy as a vehicle to which a liability policy applies, but that policy's limit is less than the liability coverage in the instant policy. Thus, if the offset provision is enforced, the policy's UIM coverage fills in the policies' gap in the coverage, and recovering under both policies, the insured will always receive the total amount equal to the policy's *uninsured* motorist limit ($250,000). That UIM coverage (providing for total benefits between the two policies equal to the uninsured coverage) is the same UIM coverage required by Kansas law. *See* K.S.A. § 40-284(b).

5

under the policy; a subsection setting forth various exclusions; a subsection explaining the "Limits of Liability;" and subsections on the existence of other insurance policies and subrogation—all of which further define and limit the actual uninsured and UIM coverage that the policy provides.

Finally, Ms. Sear points to the "Limits of Liability" subsection of Part IV that contains the offset provision in its sixth paragraph. The first paragraph of that subsection provides as follows:

> Limit of liability stated in the declarations for "each person" is the limit of our liability for all damages including damages for care or loss of services or consortium, because of **bodily injury** sustained by one person as a result of any one accident.[3]

(Emphasis in original.) Again, Ms. Sear relies on the fact that this sentence does not mention the application of an offset for UIM benefits. The Court again concludes, however, that the policy is nonetheless unambiguous. This sentence is true as it relates to UIM coverage, even if an offset is applied, because the limit—the maximum amount of benefits that may be received—is the $250,000 limit stated on the Declaration page. After this opening statement of the upper limit of coverage, the remainder of this subsection further defines the extent of the coverage, including the application of the offset provision.

The provisions all work together to provide coverage, in the event of an

---

[3]The second paragraph is a similar provision relating to the declarations' limit for "each accident."

6

underinsured motorist, for all damages for bodily injury suffered by the insured, up to a maximum amount of the $250,000 limit offset by the amount of the other driver's liability coverage. If all of the policy's provisions are read and interpreted together—as required under Kansas law—the policy unambiguously provides for the UIM offset. There is no other reasonable interpretation of the policy as a whole, as any other interpretation would render the offset provision a nullity.

Ms. Sear does not cite to any Kansas case in which similar policy language was ruled ambiguous. Ms. Sear relies most heavily on a case from the Missouri Supreme Court, *Jones v. Mid-Century Insurance Co.*, 287 S.W.3d 687 (Mo. 2009). In *Jones*, the court found a policy to be ambiguous and refused to enforce the policy's UIM offset provision, based on the lack of a reference to the offset (1) on the declaration page and (2) in a provision stating that the limit of UIM benefits would be the lesser of the unpaid damages and the policy's limits of liability. *See id.* at 690-93. The court held that the policy improperly promised coverage in one place and then took it away in another. *See id.* Ms. Sear argues that although Kansas law governs the present case, the Court should reach the same result in this case.

The Court respectfully declines to follow the reasoning of the *Jones* court. As discussed above, the Court concludes that the instant policy's statement of the $250,000 limit for UIM coverage is not reasonably interpreted as denying the possibility of any other applicable limitations, as such limitations are unambiguously set forth in other provisions of the policy. The *Jones* court concluded that references to the entire

7

$100,000 "limit" (the coverage limit in that case) to describe the available UIM coverage were "inaccurate and misleading" because, if an offset were applied (as would always occur, by definition, in the case of an underinsured motorist), then benefits would *never* equal $100,000. *See id.* at 692. This Court does not agree with that reasoning. The amount of the other driver's coverage (equaling the amount of the offset) could, in this case be any amount up to $250,000—and thus could be as little as one dollar. The actual UIM limit could not be accurately stated in the policy, since the amount of the offset would vary depending on the other driver involved in the accident. Thus, the policy accurately and reasonably stated that the limit—the logical and practical limit—of the amount of possible UIM benefits was $250,000.[4] As already noted, that statement of the maximum amount of benefits is true even if an offset is applied, and thus is not inaccurate. It is not misleading because it does not deny the possibility of other limitations set forth in the policy.

The *Jones* court also relied on the fact that the offset provision in its case was susceptible to an alternative interpretation. The policy language there did not actually refer to an offset of the amount of the other driver's coverage; rather, it required a reduction for any amount paid or payable by or for the other driver. *See id.* at 690. That provision could be interpreted as merely providing for a reduction of amounts paid to

---

[4]Indeed, as noted above, *see supra* note 2, the policy tracked the requirements of the Kansas statute by providing an identical limit for uninsured and UIM coverage (the Declaration page gave one limit for "uninsured and underinsured motorist" coverage collectively) and then providing an offset for UIM coverage.

8

prevent a double recovery, in the event that the damages were less than the policy's UIM limit. *See id.* at 693. Thus, the provision could still be given effect without requiring an offset of the other driver's policy limit in the event of greater damages. *See id.* In the present case, however, the policy explicitly requires an offset in the amount of the other driver's liability limit. Ms. Sear has not offered any other possible interpretation of that provision that would give it meaning without requiring an offset in this case, and this Court cannot fathom such an alternative interpretation that reasonably gives effect to all of the policy's provisions.

Thus, because the policy is not capable of more than one reasonable interpretation, the Court concludes as a matter of law that the policy is not ambiguous and must be enforced according to its terms. On these stipulated facts, the policy therefore required application of an offset in the amount of $100,000, representing the other driver's liability coverage limit. Accordingly, ANPAC is entitled to the requested declaration to the effect that it has paid the amount due under the policy, and the Court therefore awards ANPAC summary judgment on that claim.[5]

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for summary judgment (Doc. # 14) is hereby **granted**, and judgment is awarded in plaintiff's

---

[5]In light of its conclusion that the policy is not ambiguous, the Court need not address ANPAC's alternative argument that K.S.A. § 40-284(b), which requires a certain minimum amount of UIM coverage, effectively prohibited it from offering more than that minimum coverage.

9

favor against defendant.

  IT IS SO ORDERED.

  Dated this 8th day of September, 2017, in Kansas City, Kansas.

              <u>s/ John W. Lungstrum</u>
              John W. Lungstrum
              United States District Judge